**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEE DIVISION**

| | |
|---|---|
| JULIAN ROZANI, Individually and on Behalf of All Others Similarly Situated, ) ) ) ) ) **Plaintiff,** ) ) v. ) ) WEBCOLLEX, LLC, d/b/a CKS FINANCIAL, ) ) **Defendant.** ) ) | Case No.: 19-cv-980 <br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection Practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, chapter 427, Wisconsin Statutes (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Julian Rozani an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family, or household purposes.

5. Plaintiff is also a "customer" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(17), in that he engaged in a consumer transaction.

6.     Defendant Webcollex, LLC ("Webcollex") is a foreign limited liability company located at 505 Independence Parkway, Suite 300, Chesapeake, Virginia 23320 and with Wisconsin registered agent C T Corporation System, 301 S. Bedford St. Suite 1, Madison, Wisconsin 53703.

7.     Webcollex does business under the fictitious or trade name "CKS Financial."

8.     Webcollex is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9.     Webcollex is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

10.    Webcollex is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

**FACTS**

11.    On or about August 23, 2018, Webcollex mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "Velocity Investments LLC" ("Velocity") and originally obtained through "Prosper Funding LLC" ("Prosper Funding"). A copy of this letter is attached to this complaint as Exhibit A.

12.    Upon information and belief, the alleged debt referenced in Exhibit A was incurred as the result of a short-term, unsecured consumer loan, which was used exclusively for personal, family, or household purposes. *See* https://www.prosper.com/about.

13.    Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

14.    Upon information and belief, Exhibit A is a form debt collection letter used by Webcollex to attempt to collect alleged debts.

2

15.     Upon information and belief, Exhibit A is the first written communication Webcollex sent to Plaintiff regarding the alleged debt referenced in the letter.

16.     Exhibit A includes the following notice, which largely tracks the statutory language of the disclosures required by 15 U.S.C. §§ 1692g(a)(3)-(5):

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Exhibit A.

### *Confusing and Misleading Representations About the Amount of the Debt*

17.     Exhibit A does not clearly state the amount of the debt.

18.     Exhibit A includes the following:

Balance: $1,751.30

| | |
|---|---|
| Original Creditor: Prosper Funding LLC | Charge-off: $1,751.30 on 07/08/2018 |
| Original Account Number Ending In: 0827 | Post Charge-Off Interest: $.00 |
| Last Payment to Original Creditor: $401.96 on 02/10/2018 | Post Charge-Off Fees: $.00 |
| | Post Charge-Off Payments: $.00 |

Exhibit A.

19.     Exhibit A indicates that the alleged debt was charged-off a little more than a month before the letter was sent to Plaintiff.

20.     Exhibit A threatens to collect "Post Charge-Off Interest" and other "Post Charge-Off Fees." Although the amount of each in Exhibit A is $0.00, the letter implies that there could be interest or other fees added to the debt in a future letter. *Tylke v. Diversified Adjustment Serv.*, No. 14-cv-748; 2014 U.S. Dist. LEXIS 153281, *7 (E.D. Wis. Oct. 28, 2014) ("the inclusion of a collection fee, even one showing a balance of zero, could imply the future possibility of one."); *Duarte v. General Revenue Corp.*, No. 17-cv-2754, 2017 U.S. Dist. LEXIS 188441, at *7-8 (N.D. Ill. Nov. 15, 2017) ("With regard to costs, the balance statement says only that the 'current

3

cost balance' is zero.  The Court agrees with Duarte that this statement could plausibly imply that costs might accrue in the future, otherwise such a column would be unnecessary.").

21.     As a district court in the Northern District of Illinois recently explained:

[B]y stating that fees and collection costs stood at "$0.00," instead of stating something like "N/A" or declining to mention fees and collection costs at all, the letter reasonably could be read to imply that such charges would begin to accrue if Wood did not pay the debt.  Why, after all, would Allied include a column for fees and collection charges, and insert a dollar figure ($0.00), if not to suggest that such fees and costs might possibly accrue in the future?

*Wood v. Allied Interstate, LLC*, No. 17-cv-4921, 2018 U.S. Dist. LEXIS 98738, at *6 (N.D. Ill. June 13, 2018).

22.     On the face of <u>Exhibit A</u>, it is impossible to determine the amount that Webcollex is attempting to collect because the letter is confusing as to whether the balance of the account is increasing as a result of interest and non-interest fees.

23.     The unsophisticated consumer would be confused and misled as to whether the references to "Post Charge-Off Interest" and other "Post Charge-Off Fees" meant that the account was bearing interest and other fees, and thus may actually be greater than the "Balance" stated in <u>Exhibit A</u> by the time the consumer actually received <u>Exhibit A</u>.  *See Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 974-48 (7th Cir. 2004).

24.     A creditor or debt collector does not waive its right to interest or fees simply because it does not impose these charges during the first month after an account charges off. *E.g., Ruge v. Delta Outsource Group, Inc.*, 2017 U.S. Dist. LEXIS 35047, at *10-11 (N.D. Ill. Mar. 13, 2017) ("A jury could not find implied waiver based on the two months that Comenity Bank did not charge interest when Ruge's credit card agreement allowed the bank to delay enforcing its rights without waiver ….").

4

25.     It is not uncommon for third-party debt buyers like Velocity or third-party debt collectors like Webcollex to begin to add interest after the debt is assigned.  *See, e.g., Simkus v. Cavalry Portfolio Servs., LLC*, 12 F. Supp. 3d 1103, 1106-07 (N.D. Ill. 2014).

26.     The unsophisticated consumer understands that debts like consumer loans may continue to accrue interest after charge-off.   *See,* e.g., https://prosper.zendesk.com/hc/en-us/articles/210013713-What-does-it-mean-for-a-loan-to-be-charged-off- ("If your [Prosper] loan becomes more than 120 days past due (you missed at least the last 5 monthly payments), your loan will be considered 'charged-off' unless you are otherwise notified by Prosper.  ... **Interest continues to accrue on the principal balance as usual.**  There are no changes to the interest rate or the way interest is accrued.").

27.     Exhibit A states that the "Balance: $1,751.30" was the same as the "Charge-off: $1,751.30 on 07/08/2018."

28.     The unsophisticated consumer reviewing Exhibit A would wonder whether the "Balance" stated in Exhibit A was referring to the balance as of July 8, 2018, when the account charged off, and had actually increased between July 8, 2018 and the time Webcollex mailed the letter.

29.     Upon information and belief, neither Velocity nor Webcollex add interest or fees to accounts like Plaintiff's as a matter of course.

30.     The references to "Post Charge-Off Interest" and "Post Charge-Off Fees" confusingly and misleadingly imply to the unsophisticated consumer that it is bearing interest.

31.     Moreover, itemizing these amounts alongside a zero itemization for "Post Charge-Off Payments" further suggests that the itemized amounts are subject to change.

5

32.     Underline{Exhibit A} fails to state the amount of the debt in a non-confusing manner.  The unsophisticated consumer would be confused as to whether Webcollex was attempting to collect a balance that was increasing as a result of interest and/or non-interest fees.

33.     The ambiguous zero amount itemizations could be interpreted in several different ways, only one of which may be correct:

> There are several possible ways the statement could be interpreted. For example, it is possible that, as the defendant suggests, an "unsophisticated consumer" might understand the statement to be explaining that no part of the debt is a 'collection fee' even though the Verizon agreement allows for one.  On the other hand, it is also possible that an "unsophisticated consumer" would interpret the statement to mean that there is no "collection fee" now but that one could be assessed later on.

*Tylke v. Diversified Adjustment Serv.*, 2014 U.S. Dist. LEXIS 153281, at *6-7 (E.D. Wis. Oct. 28, 2014).

34.     In the absence of an affirmative statement that the account was (or was not) bearing interest and non-interest fees, the ambiguous references to interest and non-interest fees "accrued since charge-off" could imply that interest and fees were accruing.

35.     The Seventh Circuit explained in *Chuway*, 362 F.3d at 949, that "[a] letter can be confusing even to a sophisticated reader though it does not contain an outright contradiction[.]"

36.     The apparent contradiction and confusion inherent in itemizing zero amounts is gratuitous.  Had <u>Exhibit A</u> simply stated that interest was not accruing, or stated that the interest *rate* was zero and the account was not bearing fees, it would not have engendered such gratuitous and unnecessary confusion.  *Duarte*,2017 U.S. Dist. LEXIS 188441, at *7-9; *Wood*, 2018 U.S. Dist. LEXIS 98738, at *6.

6

37.     The debt collector does not state the amount of the debt clearly if it ambiguously implies that the debt collector may be increasing when it is not. *Chuway*, 362 F.3d at 947:

> If the debt collector is trying to collect only the amount due on the date the letter is sent, then he complies with the Act by stating the "balance" due, stating that the creditor "has assigned your delinquent account to our agency for collection," and asking the recipient to remit the balance listed—and stopping there, without talk of the "current" balance.

38.     Furthermore, there is no explanation in the letter as to what the non-interest "Post Charge-Off Fees" are or would be.

39.     The unsophisticated consumer interprets references to "Fees" in collection letters, even when the amount is $0.00, as representations that the debt collector has a right to add charges to the alleged debt, and that charges will be sought in future letters.

40.     Neither Webcollex nor Velocity, however, could add collection fees to Plaintiff's account.

41.     As a short-term, unsecured consumer loan, the alleged debt referenced by Exhibit A is a "consumer credit transaction" under the WCA, Wis. Stat. §§ 421-427.

42.     Wis. Stat. § 421.301(10) defines a "consumer credit transaction":

> a consumer transaction between a merchant and a customer in which real or personal property, services or money is acquired on credit and the customer's obligation is payable in installments or for which credit a finance charge is or may be imposed, whether such transaction is pursuant to an open-end credit plan or is a transaction involving other than open-end credit. The term includes consumer credit sales, consumer loans, consumer leases and transactions pursuant to open-end credit plans.

43.     Plaintiff's loan required Plaintiff to pay interest (*i.e.,* a finance charge) and was payable in more than two installments. Wis. Stat. §§ 421.301(20)(a), 421.301(30).

7

44.    The WCA specifically prohibits the attachment of collection fees and other "default charges" on consumer credit transactions, even if the fee is separately negotiated. Wis.Stat. § 422.413(1) provides:

> no term of a writing evidencing a consumer credit transaction may provide for any charges as a result of default by the customer other than reasonable expenses incurred in the disposition of collateral and such other charges as are specifically authorized by chs. 421 to 427.

*See also, Patzka v. Viterbo College*, 917 F. Supp. 654, 659 (W.D. Wis. 1996).

45.    Neither Wis.Stat. § 422.202, entitled "Additional charges," nor any other section of the WCA, lists collection fees as a permissible fee a creditor may charge in connection with a consumer credit transaction.

46.    <u>Exhibit A</u>, with its nebulous reference to non-interest "Post Charge-Off Fees," falsely states or implies that Webcollex has a right to add collection fees to the debt.

47.    Even if a provision of any agreement between Plaintiff and the original creditor would purport to permit Webcollex to impose a collection fee, the WCA prohibits such fees. Wis. Stat. § 421.106(1) ("Except as otherwise provided in chs. 421 to 427, a customer may not waive or agree to forego rights or benefits under chs. 421 to 427."); *See also, Lox v. CDA, Ltd.*, 689 F.3d. 818 (7th Cir. 2012) (false representation that attorney fees would be added when they could not be, violated 1692e).

48.    Further, the alleged debt has been accelerated and sold to a debt buyer.  There are no late fees that could conceivably be added to Plaintiff's alleged debt.  *E.g., Rodriguez v. Codilis & Assocs., P.C.*, No. 17-cv-3656, 2018 U.S. Dist. LEXIS 54898, at *11 (N.D. Ill. Mar. 30, 2018) ("As Rodriguez points out, BSI cannot impose late charges for failure to make monthly payments after a loan has been accelerated.") (citing *Rizzo v. Pierce & Assocs.*, 351 F.3d 791, 793 n.1 (7th Cir. 2003)).

8

49.     Indeed, Prosper's website explains that late charges do not accrue after a loan charges off.   https://prosper.zendesk.com/hc/en-us/articles/210013713-What-does-it-mean-for-a-loan-to-be-charged-off- ("Late fees are no longer assessed after charge-off.").

*Confusing and Misleading Representations About the Identity of the Creditor*

50.     Further, Exhibit A fails to identify the current creditor to whom the debt is owed in a non-confusing manner.

51.     Exhibit A contains the following:

```
CKS Account ID: ████155
Balance: $1,751.30
Original Creditor:  Prosper Funding LLC          Charge-off:  $1,751.30 on 07/08/2018
Original Account Number Ending In:  0827          Post Charge-Off Interest:  $.00
Last Payment to Original Creditor: $401.96 on 02/10/2018          Post Charge-Off Fees:  $.00
                                                 Post Charge-Off Payments:  $.00

This letter serves as notification to inform you that Velocity Investments LLC purchased your referenced
Prosper Funding LLC account which has been placed with our office.
```

Exhibit A.

52.     On its face, Exhibit A does not identify the current creditor to whom the debt is owed.

53.     Exhibit A states that the "Original Creditor" is "Prosper Funding LLC."

54.     Exhibit A further states that "Velocity Investments LLC purchased your referenced Prosper Funding LLC account which has been placed with our office."

55.     Exhibit A does not clearly identify Velocity as the only current creditor to whom the debt is owed. *Zuniga v. Asset Recovery Solutions*, NO. 17-cv-5119, 2018 U.S. Dist. LEXIS 51063, at *8 (N.D. Ill. Mar. 28, 2018):

> Debt collectors have puzzled debtors with a variety of confusing terms in purporting to identify the current creditor.  Some letters make confusing references to multiple non-creditor entities, rather than simply identifying the original creditor and the current creditor.  *Deschaine v. Nat'l Enter. Sys. Inc.*, 2013 U.S. Dist. LEXIS 31349, 2013 WL 12121197, at *1 (N.D. Ill. Oct. 20, 2011) (referencing a debt collector's "client" in addition to other creditor parties).  Other

letters use words that are ambiguous in reporting who is the current creditor. *E.g., Walls v. United Collection Bureau Inc.*, 2012 U.S. Dist. LEXIS 68078, 2012 WL 1755751, at *2 (N.D. Ill. May 16, 2012) (using the phrase "current owner" instead of current creditor). And still others state the name of the current creditor somewhere in the letter—but without saying that the creditor owns the debt. *Janetos*, 825 F.3d at 321-22

56. Exhibit A states that, if the consumer submits a written request within thirty days of receipt, "this office will provide you with the name and address of the original creditor, *if different* from the current creditor." Exhibit A (emphasis added).

57. Exhibit A states that the "Original Creditor" is Prosper Funding but does not state a "Current Creditor." Exhibit A also states that "Velocity Investments LLC purchased your referenced Prosper Funding LLC account which has been placed with our office."

58. The statement that "Velocity Investments LLC purchased your referenced Prosper Funding LLC account which has been placed with our office" is plainly ambiguous as to the scope of Velocity's "purchase," who "placed" the account with CKS, and whether the "placement" with CKS was an assignment for collection or a conveyance of title. As a result, the unsophisticated consumer would not know whether the creditor was Prosper Funding, Velocity, Webcollex, some undisclosed third-party entity, or some combination of the above. *See, e.g., Dewees v. Legal Servicing LLC*, 506 F. Supp. 2d 128, 132-33 (E.D.N.Y. 2007); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773 (S.D. Ind. 2016).

59. The Seventh Circuit found that similar language did not clearly identify the current creditor to whom the debt is owed:

> Nowhere did the letter say that Asset Acceptance currently owned the debts in question. Asset Acceptance was identified as the 'assignee' of another company, not as the current creditor or owner of the debt. The letter went on to say that the referenced account "has been transferred from Asset Acceptance, LLC, to Fulton, Friedman & Gullace, LLP." These statements simply did not say who currently owned the debts. Instead, each recipient was left to guess who owned the debt

following the "transfer" of the "account." On its face, then, the letter failed to disclose the information that § 1692g(a)(2) required.

*Janetos v. Fulton Friedman &Gullace, LLP*, 825 F.3d 317, 321 (7th Cir. 2017).

60.     As in *Janetos*, upon receiving <u>Exhibit A</u> an unsophisticated consumer "might correctly guess that [Velocity] was the current creditor, but a lucky guess would have nothing to do with any disclosure the letters provided." *Janetos*, 825 F.3d at 323.

61.     A debt collector states the name of the creditor in a confusing manner if it represents that the debt's "Original Creditor" is one entity without identifying another entity as the "Current Creditor." *Janetos*, 825 F.3d at 323; *see also, e.g., Zuniga*, 2018 U.S. Dist. LEXIS 51063, at *9; *Dokes v. LTD Fin. Servs., L.P.*, No. 18-cv-761, 2018 U.S. Dist. LEXIS 155908, at *20-28 (N.D. Al. Sept. 13, 2018); *Long*, 223 F. Supp. 3d 773; *Dewees*, 506 F. Supp. 2d at 132-33; *Walls v. United Collection Bureau, Inc.*, No. 11-cv-6026, 2012 U.S. Dist. LEXIS 68079 (N.D. Ill. May 16, 2012).

62.     A debt collector states the name of the creditor in a confusing manner if it states that the consumer still has an account with the original creditor after the original creditor has sold the debt. *E.g., Taylor v. Alltran Fin. LP*, No. 18-cv-306, 2018 U.S. Dist. LEXIS 159862, at *7 (S.D. Ind. Sept. 19, 2018); *Braatz v. Leading Edge Recovery Solutions, LLC*, No. 11-cv-3835, 2011 U.S. Dist. LEXIS 123118 (N.D. Ill. Oct. 21, 2011).

63.     Even assuming the unsophisticated consumer understood that Velocity "purchased" the debt in its entirety, and the debt was "placed" with Webcollex for collection purposes only, <u>Exhibit A</u> leaves open the express possibility that the debt was "placed with [Webcollex]" by some undisclosed third-party creditor that took assignment after Velocity "purchased your referenced Prosper Funding LLC account."

11

64. Upon receiving Exhibit A, the unsophisticated consumer would be left to guess whether the debt was owed to Prosper Funding, Velocity, Webcollex, some unnamed third-party, or some combination of the above.

65. Consumer fraud is rampant in the debt buying industry, where even legitimate debts may lead to fraud because they may be sold to more than one purchaser at a time:

> Americans are currently late on more than $600 billion in bills, according to Federal Reserve research, and almost one person in 10 has a debt in collectors' hands. The agencies recoup what they can and sell the rest down-market, so that iffier and iffier debt is bought by shadier and shadier individuals. Deception is common. Scammers often sell the same portfolios of debt, called "paper," to several collection agencies at once, so a legitimate IOU gains illegitimate clones.

https://www.bloomberg.com/news/features/2017-12-06/millions-are-hounded-for-debt-they-don-t-owe-one-victim-fought-back-with-a-vengeance; *see also, FTC v. Swatsworth*, 17-cv-340-GCM, 2018 U.S. Dist. LEXIS 142696, at *17 (W.D.N.C. Aug. 22, 2018).

66. The confusing and misleading representations in Exhibit A are material because the unsophisticated consumer would be concerned about the possibility of having to pay the same debt twice. *Janetos*, 825 F.3d at 324-25.

67. Plaintiff read Exhibit A and was confused by it.

68. Plaintiff was misled and confused by Exhibit A.

69. The unsophisticated consumer would be misled and confused by Exhibit A.

70. Plaintiff had to spend time and money investigating Exhibit A, and the consequences of any potential responses to Exhibit A.

71. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibit A.

***The FDCPA***

72.     The FDCPA creates substantive rights for consumers. Violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l& Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes ... do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25,

2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

73.     Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive

14

debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

74.     Misrepresentations of the character, amount or legal status of any debt and misrepresentations as to the proper party to pay injure or risk injury to interests expressly protected by Congress in the FDCPA. Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

75.     15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

76.     15 U.S.C. § 1692e(2) specifically prohibits "the false representation of the character, amount, or legal status of any debt [or] any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt."

77.     15 U.S.C. § 1692e(5) specifically prohibits "the threat to take any action that cannot legally be taken or that is not intended to be taken."

78.     15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt.

79.     15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

80.     15 U.S.C. § 1692f(1) specifically prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

81.     15 U.S.C. § 1692g(a)(1) requires that, within five days of the initial communication with a consumer, the debt collector provide a written notice that states "the amount of the debt."

15

82.    15 U.S.C. § 1692g(a)(2) requires that, within five days of the initial communication with a consumer, the debt collector provide a written notice that states "the name of the creditor to whom the debt is owed."

83.    The Seventh Circuit held in *Janetos* that the amount of the debt and the name of the creditor must be stated in a non-confusing manner, and that the failure to disclose this information in a non-confusing manner is a violation.  825 F.3d at 323.

### *The WCA*

84.    The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

85.    The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state."*Kett*v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

86.    To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

87.    To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies, including punitive damages. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

88.    The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides

injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

89.     Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

90.     Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

91.     Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer ... in such a manner as can reasonably be expected to threaten or harass the customer."

92.     Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer ...."

93.     Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

94.     Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I – FDCPA

95.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

96.     Exhibit A states the "Balance" of the debt is $1,7510.30, but also contains vague and ambiguous references to post-charge-off interest and fees.

97.     Exhibit A fails to state the amount of the debt in a non-confusing manner.  It is unclear whether the debt collector is attempting to collect interest or fees on the account.

98.     Exhibit A impliedly threatens the unsophisticated consumer that interest and fees are accruing on the account.

99.     Exhibit A implies that Defendant may charge "Post Charge-Off Fees" when there are no circumstances under which Defendant could actually charge such post-charge-off fees. The WCA prohibits Defendant from collecting such fees.

100.    Defendant violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10), 1692f, 1692f(1), and 1692g(a)(1).

## COUNT II – FDCPA

101.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

102.    Exhibit A does not clearly identify Velocity as the "current creditor" to whom the debt is owed.

103.    Even assuming the unsophisticated consumer actually understood that Velocity was a creditor at some point and that the debt was placed with Webcollex for collection purposes only, Exhibit A leaves open the express possibility that Velocity assigned the debt to some third-party which placed the placed the debt with Webcollex.  *Janetos*, 825 F.3d at 322.

18

104.     Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10),and 1692g(a)(2).

## COUNT III -- WCA

105.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

106.     <u>Exhibit A</u> states the "Balance" of the debt is $1,7510.30, but also contains vague and ambiguous references to post-charge-off interest and fees.

107.     <u>Exhibit A</u> fails to state the amount of the debt in a non-confusing manner.  It is unclear whether the debt collector is attempting to collect interest or fees on the account.

108.     <u>Exhibit A</u> impliedly threatens the unsophisticated consumer that interest and fees are accruing on the account.

109.     <u>Exhibit A</u> implies that Defendant may charge "Post Charge-Off Fees" when there are no circumstances under which Defendant could actually charge such post-charge-off fees. The WCA prohibits Defendant from collecting such fees.

110.     Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## CLASS ALLEGATIONS

111.     Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by <u>Exhibit A</u> to the complaint in this action, (c) seeking to collect a debt for personal, family, or household purposes, (d) between July 10, 2018 and July 10, 2019, inclusive, (e) that was not returned by the postal service.

112.     The Class is so numerous that joinder is impracticable.  On information and belief, there are more than 50 members of the Class.

19

113.    There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA and the WCA.

114.    Plaintiff's claims are typical of the claims of the Class members.  All are based on the same factual and legal theories.

115.    Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

116.    A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

117.    Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a)    actual damages;

(b)    statutory damages;

(c)    attorneys' fees, litigation expenses and costs of suit; and

(d)    such other or further relief as the Court deems proper.

Dated:  July 10, 2019

**ADEMI & O'REILLY, LLP**

By:    /s/ Mark A. Eldridge
       John D. Blythin (SBN 1046105)
       Mark A. Eldridge (SBN 1089944)
       Jesse Fruchter (SBN 1097673)
       Ben J. Slatky (SBN 1106892)

20

3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com